Travis agt. Jenkins.

## SUPREME COURT.

### Edson W. Travis agt. Horace Jenkins.

A *justice of the peace* is not disqualified from trying a cause and rendering judgment therein, by reason of his having been a *juror* in an action between the same parties and for the same cause of action, wherein a verdict was rendered for the plaintiff.

Where a plaintiff brings his action to recover damages on the sale of a dairy of butter by the defendant, under a contract that the defendant was to deliver to him a prime dairy of butter at a particular railroad depot, proof that when the butter was received in New York it was not prime butter, is not sufficient evidence to sustain the action against the defendant's evidence that when the butter was headed up in the firkins two or three weeks before its delivery, it was a prime article, and through the neglect of the plaintiff or his agents, it had been suffered to lie an unreasonable length of time upon the dock in New York, after being landed from the railroad, and the firkins exhibited marks of very rough and careless usage in the transportation—such usage and exposure having a tendency to injure the butter

*Delaware General Term, November*, 1865.

*Before* Mason, Balcom *and* Parker, *Justices.*

This was an action commenced in justice's court to recover damages on the sale of a dairy of butter, the plaintiff alleging that by the terms of the contract, the defendant was to deliver to him a prime dairy of butter, and when the butter was received in New York, it was not prime butter. The defendant claimed that at the time of delivery at Deposit, the butter was a prime article. Upon the return day before the justice, the defendant moved to "quash all further proceedings," on the ground that "the justice was a juror on a former trial, and rendered judgment therein for the same cause of action," which motion was denied. Upon the trial of the cause before the justice, the defendant's counsel again moved to "quash all further proceedings," upon the same grounds as before stated, and produced an affidavit of the fact. The motion was denied, and after a trial of the cause, the justice rendered a judgment in favor of the plaintiff for $50 and costs.

Travis agt. Jenkins.

The defendant appealed to the Delaware county court, which court reversed the decision of the justice, from which decision the plaintiff appeals to this court.

A. C. COWLES, *attorney for plaintiff.*
M. & D. W. GRIFFIN, *attorneys for defendant.*

By the court, PARKER, P. J. Upon the return day of the summons before the justice, in this action, the defendant moved "to quash the proceedings" on the ground stated, but without producing any evidence of the fact that the justice was a juror in a prior action between the parties for the same cause of action for which this suit is brought, in which a verdict was rendered for the plaintiff (the judgment in which former suit was subsequently reversed). The motion was denied, and the parties joined issue, and the suit was adjourned. On the adjourned day, the defendant upon an affidavit of the fact above stated, moved that "the suit abate." No denial of the fact was made, but the motion was denied and the parties proceeded to trial, and the justice rendered judgment for the plaintiff for $50 damages, besides costs. The defendant appealed to the Delaware county court, which reversed the judgment of the justice, on what ground does not appear. The plaintiff alleging that such reversal was erroneous, brings the case into this court by appeal, and asks for a reversal of the judgment of the county court, and an affirmance of that of the justice. The defendant's counsel insists upon only two grounds of error before the justice as justifying the reversal of the justice's judgment by the county court, and these are : that the justice should have dismissed the action upon the ground of his having prejudged it as a juror, and the evidence failed to make out a cause of action. The statutes, which prohibit judges in certain cases from sitting as such, or taking part in the decision of actions, do not include this case (3 *R. S.* 465, 466, *5th ed*). Under

the constitution of 1821 and the Revised Statutes, judges of appellate courts were forbidden to take part in reviewing their own decisions made in any other court. (*Cons.* 1821, *art.* 5, § 1 ; 2 *R. S.* 275, § 3.) By the constitution of 1846, these prohibitions have been abrogated, and the principles stated by Judge BRONSON in *Pierce* agt. *Delamater* (1 *Coms.* 17), " that there is nothing in the nature of the thing which makes it improper for a judge to sit in review upon his own judgments," recognized and established. Hence the judges of this court at general term, are constantly engaged in reviewing their own decisions made at the courts of oyer and terminer, at the circuits, and at special terms. Under such a system it is impossible to say that the prejudging of a case by a judge disqualifies him from trying and deciding it. In the case at bar, the justice stood in a more favorable position for the defendant than if he were merely reviewing his former decision, for peradventure, the evidence will differ from that which induced his former finding, and lead him to a different conclusion. Since the fundamental laws proceed upon a different presumption in regard to the judge from that applicable to a juror, we must, in obedience to the principle established, hold that the justice committed no error in retaining and trying the cause (*and see Fry* agt. *Bennett*, 28 *N. Y. R.* 329).

Upon the other ground, however, I think the county court was right in reversing the judgment of the justice. There is a manifest defect of evidence to sustain the judgment, admitting that there is sufficient evidence of the identity of the butter received by the plaintiff's consignee in New York, with that delivered by the defendant at the railroad depot, still I think the plaintiff fails to show that the butter so delivered was not of the quality required by contract. By the contract the butter was to be a prime article, and the defendant testifies that when it was headed up in the firkins, two or three weeks before it was delivered, it was good butter, as good as his dairy ever produced, and

his butter had always commanded the highest price. · This is corroborated, so far as the witness could judge from the general appearance of the butter, by the person who headed it up. No other witness ever saw the butter until it was opened by the consignee in New York, when it was in an injured condition, but from the neglect of the plaintiff or his agents, it had been suffered to lie an unreasonable length of time upon the dock in New York, after being landed from the railroad, and the firkins exhibited marks of very rough and careless usage in the transportation; and it is shown that such usage and exposure would have a tendency to injure the butter. Now although the butter when opened in New York was not such as the contract called for, it is not safe under the evidence, to conclude that it was not a prime article of butter when delivered, especially against the evidence that it was such. *Non constat* but it was injured by the careless treatment it received after delivery. It was incumbent on the plaintiff to make out his case, which I think he failed to do by failing to show any defect in the butter when delivered, or facts from which it would be safe and proper to infer such defect.

For this reason I think the county court was right in reversing the judgment of the justice, and that the judgment appealed from should be affirmed, with costs.